Filed 11/19/25 Certified for Publication 12/12/25 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JULIE ADAIR HOUSER, | |
| Petitioner, | G065315 |
| v.<br>THE SUPERIOR COURT OF<br>ORANGE COUNTY, | (Super. Ct. No. 13P001609) |
| Respondent; | O P I N I O N |
| MARLENE KLARBORG LARSEN, | |
| Real Party in Interest. | |

Original proceedings; petition for a writ of certiorari to challenge an order of the Superior Court of Orange County, Stephen T. Hicklin, Judge. Petition Granted.

Law Offices of Lisa R. McCall, Lisa R. McCall and Erica M. Barbero for Petitioner.

No appearance for Respondent.

Marlene Klarborg Larsen, in pro. per., for Real Party in Interest.

\*       \*       \*

Petitioner Julie Adair Houser seeks a writ of certiorari to annul a judgment of contempt finding her guilty of five counts of violating custody orders related to her 17-year-old son, Xander. The judgment arises out of a long-standing and high-conflict parentage case with real party in interest Marlene Klarborg Larsen. The trial court found Houser in contempt for unilaterally authorizing Xander's participation in school sports and for failing to consult on a decision to get Xander braces, fining her $10,000.

Because contempt is a quasi-criminal proceeding, we must strictly construe the underlying court orders and require substantial evidence of a willful violation of an order. Here, that standard has not been met. The orders allegedly violated were (1) the order that both parents share joint legal custody, and (2) the order that neither parent *schedule* activities during the other's parenting time. Neither order was violated. Because the order sharing joint legal custody did not require both parents' consent for any particular activities, Houser had the legal authority to unilaterally sign her son up for sports activities and to get him braces. And while the sports teams did result in some of Xander's activities occurring during Larsen's parenting time, Houser did not *schedule* those events, the teams did, and thus she did not violate the letter of the order.

More broadly, life for a teenager involves sports, activities, and occasional medical needs. While co-parenting requires communication, a parent who facilitates these normal life activities for their child should not be held in contempt unless they have willfully violated the express and specific terms of a court order. The orders here lack the specificity required to support the court's findings. We therefore grant the petition and annul the judgment of contempt.

FACTUAL AND PROCEDURAL BACKGROUND

The parties, Houser and Larsen, are the parents of Xander, born in December 2007. Houser has primary physical custody in Nevada City, while Larsen resides in Orange County. Larsen has visitation one weekend out of the month.

The contempt proceeding arises from two provisions of a May 6, 2019, court order (the "2019 Order"). The first is the Joint Legal Custody Order, which simply states: "The parties shall share joint legal custody of Xander." The second is the Scheduling Order, which provides: "Neither parent shall schedule any school events, extracurricular or religious events, medical or therapeutic appointments, or other events during the other parent's custodial time without approval of the other parent."

On April 9, 2024, Larsen filed an amended Order to Show Cause for Contempt, alleging 36 violations of court orders. After numerous counts were dismissed, a trial was held on October 28 and 29, 2024, on five remaining counts.

The five counts at issue are as follows:

Count 27 (Scheduling Order violation): Larsen alleged Houser interfered with her February 2023 parenting time by "unilaterally signing him up for [a] mountain bike event." The evidence showed Houser informed Larsen on Wednesday, February 15, 2023, of a team caravan for a bike event scheduled for that Saturday, during Larsen's weekend. When Larsen objected, Houser withdrew Xander from the event and confirmed on Friday, February 17, that he would be at the regular drop-off the next day.

Count 29 (Scheduling Order violation): Larsen alleged Houser interfered with her December 2022 parenting time by "unilaterally signing him up for ski team." The evidence showed Houser informed Larsen on

December 13, 2022, that Xander had ski practice at 9:00 a.m. that Saturday, during Larsen's weekend. Larsen objected and ultimately testified that she chose not to travel to Nevada City for her visit that weekend.

Count 30 (Joint Legal Custody violation): Larsen alleged Houser unilaterally made the decision for Xander to join the ski team, informing her on November 6, 2022, after the fact. Houser testified she authorized Xander's participation after he signed himself up.

Count 31 (Joint Legal Custody violation): Larsen alleged Houser unilaterally made the decision for Xander to join a basketball team, informing her on March 27, 2022. Houser testified Xander had played on the team every year since 2018 with Larsen's assent.

Count 34 (Joint Legal Custody violation): Larsen alleged Houser unilaterally moved forward with a treatment plan for Xander's braces. The evidence showed Houser informed Larsen on August 24, 2022, that the dentist recommended braces, attached the treatment plan, and stated, "I will make the appointment." Larsen did not object to the treatment.

The trial court found Houser guilty on all five counts. The court stated that Houser's actions were "part and parcel of that same course of conduct" that had previously resulted in a $100,000 sanction against her and that her decisions were presented to Larsen as a "fait accompli." The court imposed a sanction of $10,000 ($2,000 per count). Houser now petitions for a writ of certiorari to annul the contempt judgment.

## DISCUSSION

Contempt of a court order is a quasi-criminal proceeding due to the potential for imprisonment. (*People v. Gonzalez* (1996) 12 Cal.4th 804, 816.) Accordingly, a judgment of contempt is not entitled to the usual presumptions of correctness. (See *Koehler v. Superior Court* (2010) 181

4

Cal.App.4th 1153, 1166-1167.) We must strictly construe the underlying order in favor of *the accused* and will annul the judgment unless there is substantial evidence of a willful violation of a lawful order that is both specific and unambiguous. (See *In re Marcus* (2006) 138 Cal.App.4th 1009, 1014-1015.) Any ambiguity must be resolved in favor of the person charged with contempt. (*Id.* at p. 1015.) Punishment for contempt "'can only rest upon [a] clear, intentional violation of a specific, narrowly drawn order. Specificity is an essential prerequisite of a contempt citation.'" (*Board of Supervisors v. Superior Court.* (1995) 33 Cal.App.4th 1724, 1737.) The power of contempt is the court's "'ultimate weapon,'" to be used with great prudence. (*Koehler, supra,* 181 Cal.App.4th at p. 1171.)

Here, the trial court's findings fail this standard.

1. *Counts 27 and 29: The Scheduling Order*

The Scheduling Order prohibits a parent from "scheduling" an event during the other's time without approval. Strictly construed, Houser did not violate this order.

In both instances involving the mountain bike event and the ski team practice, Houser did not personally set the dates and times of the events; the school and its coaches did. While Houser authorized Xander's participation, the act of "authorizing" him to join a team is not the same as "scheduling" a specific practice or event. To hold otherwise would be to expand the meaning of the order beyond its plain language, which is impermissible in a contempt proceeding.

Furthermore, with the mountain bike event (Count 27), Houser cured any potential violation by withdrawing Xander from the event as soon as Larsen objected. There is no substantial evidence to support a finding of contempt on these counts.

5

2. *Counts 30, 31, and 34: The Joint Legal Custody Order*

The contempt findings regarding Houser's unilateral decisions permitting Xander to join the ski team (Count 30), the basketball team (Count 31), and authorizing braces (Count 34) fail because the underlying Joint Legal Custody Order does not prohibit those decisions.

The order simply states, "The parties shall share joint legal custody of Xander." While this reflects the court's intent for co-parenting, it does not prohibit unilateral decision-making altogether. In establishing joint legal custody, Family Code section 3083 requires a court to "specify the circumstances under which the consent of both parents is required." Where an order fails to do so, section 3083 provides that "either parent acting alone may exercise legal control of the child."

The 2019 Order contains no such specifications. It does not require mutual consent before enrolling a child in sports or consenting to dental care. While the court believed that Houser's pattern of presenting Larsen with a "fait accompli" was poor co-parenting, that conduct does not violate the express terms of the court's order. Because a finding of contempt requires a willful violation of a *clear and specific* command, these counts cannot stand. As one court noted, "[I]t is an abuse of discretion to sanction a party for disobeying an order which neither compelled nor prohibited any action." (*Van v. LanguageLine Solutions* (2017) 8 Cal.App.5th 73, 82.)

Because we find the contempt judgment is not supported by substantial evidence, we need not address petitioner's other arguments

6

regarding the improper penalty and the lack of specific findings in the court's written order.[1]

## DISPOSITION

The petition for writ of certiorari is granted. The superior court's order of January 28, 2025, finding Houser in contempt on counts 27, 29, 30, 31, and 34 is annulled. Houser shall recover her costs in this proceeding. (Cal. Rules of Court, rule 8.493, subd. (a)(1)(A).)



                                                 SANCHEZ, ACTING P. J.

WE CONCUR:


GOODING, J.


SCOTT, J.

---

[1] Larsen contends the writ petition suffers from a procedural flaw in that it was not verified by Houser. However, the petition was verified by Houser's counsel, which is permissible under Code of Civil Procedure section 446, subdivision (a), where the facts are within the knowledge of the attorney. That option is particularly appropriate where, as here, the record consists of documents filed and authenticated in the trial court.

7

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JULIE ADAIR HOUSER,<br><br>    Petitioner,<br><br>          v.<br>THE SUPERIOR COURT OF<br>ORANGE COUNTY,<br><br>    Respondent;<br><br>MARLENE KLARBORG LARSEN,<br><br>    Real Party in Interest. | G065315<br><br>(Super. Ct. No. 13P001609)<br><br> O R D E R |

The Association of Certified Family Law has requested that our opinion filed on November 19, 2025, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED.

The opinion is ordered published in the Official Reports.


SANCHEZ, ACTING P. J.

WE CONCUR:


GOODING, J.


SCOTT, J.