5/2/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| MASIMO CORPORATION,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>THE VANDERPOOL LAW FIRM, INC.,<br><br>  Defendant and Appellant. | G061829<br><br>(Super. Ct. No. 30-2019-01081908)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Theodore R. Howard, Judge.  Affirmed.

The Vanderpool Law Firm, Brooke L. Bove and Douglas B. Vanderpool for Defendant and Appellant.

Latham & Watkins, David J. Schindler, Robert J. Ellison and Alice R. Hoesterey for Plaintiff and Respondent.

## INTRODUCTION

The Vanderpool Law Firm (Vanderpool) appeals from an order awarding $10,000 in discovery sanctions against it and three defendants, John Bauche, BoundlessRise, LLC (Boundless), and Skyward Investments, LLC (Skyward). Vanderpool represented all three defendants in a lawsuit brought by Masimo Corporation based on Bauche's misappropriation of corporate funds while he was a Masimo employee. The action was stayed twice, once while Bauche appealed from the denial of an anti-SLAPP motion and again to allow a federal criminal case against him to be resolved.

Masimo was unsuccessful in obtaining substantive discovery responses from the defendants – instead of boilerplate objections – and finally moved to compel responses to interrogatories and document requests. The referee supervising discovery at this point recommended the motion to compel be granted and Masimo be awarded $10,000 in discovery sanctions. The trial court agreed and entered an order to that effect, awarding sanctions against Vanderpool and the three defendants.

We affirm the order. Vanderpool's main argument – that it had substituted out of the case as counsel before the motion to compel was filed and was therefore unsanctionable – is unavailing. It is not necessary to be counsel of record to be liable for monetary sanctions for discovery misuse. Vanderpool's other arguments are equally unavailing. The referee and the court correctly conclude that Vanderpool and its clients were liable for discovery misuse. We conclude Vanderpool was also woefully uncivil.

## FACTS

Masimo sued Bauche, Boundless, and Skyward in July 2019, after Bauche was indicted in federal court for embezzling nearly $1 million from Masimo while he was an employee. Bauche had told Masimo that he needed an "outside vendor" to assist him in his duties, and he obtained permission to engage one. The outside vendor was Boundless, a company of which Bauche was the sole member. When his fraud was

2

discovered, he agreed to transfer the money Masimo had paid for fraudulent vendor services back to Masimo. Instead, he transferred most of it to Skyward, another company of which he was the sole member. Vanderpool represented all three defendants in the civil action.

After discovering the fraud, Masimo fired Bauche and referred the matter to law enforcement. A federal grand jury indicted Bauche for mail fraud, money laundering, and related crimes.

Masimo first served discovery – interrogatories and document production requests – on the defendants in August and September of 2019. The responses, served in September and October of 2019, consisted of boilerplate objections with no substantive responses.

The defendants also filed an anti-SLAPP motion on October 1, 2019, which was denied. They appealed, thereby forcing a discovery stay, which was not lifted until March 2021, after we upheld the decision to deny the anti-SLAPP motion.[1]

Masimo filed its first motion to compel discovery responses on April 20, 2021. Bauche claimed that responding to the discovery would violate his Fifth Amendment rights, as the federal criminal case against him was still going on. The court stayed the action again. This stay was lifted in December 2021, after Bauche completed his federal diversion program and the federal case was dismissed.

By this time, the court had appointed a discovery referee. The parties and the referee held a discovery motion scheduling conference in February 2022, at which time Vanderpool represented that it would provide further discovery responses.[2]

---

[1]     *Masimo Corporation v. Bauche et al.* (Jan. 4, 2021, G058662) [nonpub. opn.]. The trial court also ruled that the anti-SLAPP motion was frivolous and awarded attorney fees to Masimo. (See Code Civ. Proc., § 425.16, subd. (c)(1).) (*Masimo Corporation v. Bauche et al., supra,* G058662, at pp. 3-4.)

[2]     From the referee's recommendations to the trial court: "On February 10, 2022, at the conclusion of a discovery motion scheduling conference call, discovery referee suggested that he retire and then counsel for all parties hold a meaningful 'meet and confer' session in a good faith attempt to resolve the issue of further discovery responses being submitted by the three defendants. Thereafter, [Vanderpool] agreed that further responses would be promptly provided by the three defendants."

3

On February 24, 2022, Vanderpool served supplemental discovery responses. These consisted some of the same objections made in 2019, plus some new ones. Although the defendants gave minimal substantive responses to the form interrogatories, their responses to the special interrogatories and the document production requests consisted entirely of objections.

On March 11, 2022, Vanderpool filed forms providing for withdrawal of counsel for Bauche, Boundless, and Skyward. In each case, Bauche – a non-lawyer – was listed as representing all three defendants, including the two companies.[3]

Masimo filed its renewed motion to compel and request for sanctions with the discovery referee on April 18, 2022.[4] Masimo asked for $17,500 in sanctions against the defendants and Vanderpool. The motion was heard on May 16, with Vanderpool specially appearing.

The referee, a retired judge, issued his recommendations to the court on May 16, 2022. He recommended that the motions to compel responses be granted, and he awarded Masimo discovery sanctions of $10,000 against the defendants and Vanderpool.

Vanderpool argued that sanctions could not be awarded against it because it had substituted out as counsel in March before the motion to compel was filed in April 2022. As the referee explained, "[Vanderpool] put all of these events into motion while it was actively representing these three defendants, and to allow such a law firm that substituted out of the case a 'free pass' to escape that responsibility defies logic."

The referee also had a few words to say about Vanderpool's including a letter from some members of Congress regarding Masimo's CEO as part of its opposition

---

[3] A question we need not resolve is whether a law firm can withdraw from representing corporate entities and substitute a non-lawyer as counsel, since non-lawyers cannot represent corporate entities. Masimo objected to the withdrawal on that ground and tried to engage with Vanderpool as counsel for the limited liability companies going forward.

[4] With Vanderpool refusing to respond to Masimo's efforts to meet and confer, Masimo's counsel eventually conferred with Bauche. He represented that he would "stick with these objections for right now."

4

to the request for sanctions against it, in an effort "inappropriately to prejudice discovery referee and the Court with irrelevant allegations of misconduct[.]" The words were "shameful" and "cannot be tolerated."

The court adopted the referee's recommendations and signed the order on September 12, 2022.

## DISCUSSION

Vanderpool's opening brief based its appeal on three arguments.[5] First, it was not counsel of record at the time the second motion to compel discovery was filed, and therefore no sanctions could be awarded against it. Second, the trial court did not independently consider the discovery referee's findings before entering the order awarding sanctions. Finally, Masimo's counsel failed to meet and confer before filing the motion. None of these arguments has merit or support in the record.

We review an order imposing discovery sanctions for abuse of discretion, and we overturn such an order only for "arbitrary, capricious, or whimsical action." (*Van v. LanguageLine Solutions* (2017) 8 Cal.App.5th 73, 80.) Factual findings are upheld if supported by substantial evidence. (*Padron v. Watchtower Bible & Tract Society of New York, Inc.* (2017) 16 Cal.App.5th 1246, 1266.)

Code of Civil Procedure section 2023.030, subdivision (a), provides: "The court may impose a monetary sanction ordering that one engaging in the misuse of the discovery process, or any attorney advising that conduct, or both pay the reasonable expenses, including attorney's fees, incurred by anyone as a result of that conduct. The court may also impose this sanction on one unsuccessfully asserting that another has engaged in the misuse of the discovery process, or on any attorney who advised that

---

[5] At oral argument, Vanderpool proffered *another* argument, one not mentioned or even alluded to in either of its appellate briefs. This was that the breakdown in the attorney-client relationship – which ultimately caused the firm to substitute out – was responsible for the boilerplate supplemental responses and therefore supplied "substantial justification" for stonewalling discovery. We find it odd that such an important explanation for Vanderpool's discovery misuse – almost the exclusive explanation at oral argument – should have been reserved for that occasion.

5

assertion, or on both. If a monetary sanction is authorized by any provision of this title, the court shall impose that sanction unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust."[6] Code of Civil Procedure section 2023.010 identifies two instances of repeated misuse of the discovery process in evidence here: "Making, without substantial justification, an unmeritorious objection to discovery" (*Id.*, subd. (e)) and "Making an evasive response to discovery." (*Id.*, subd. (f).)

Unquestionably Vanderpool engaged in discovery misuse when it supplied the initial responses to the interrogatories and to the document production requests and when it supplied the supplemental responses, especially after representing to the discovery referee that it would "promptly" provide "further responses." The referee undoubtedly assumed these would be substantive responses, not a repetition of what had occasioned the discovery motion in the first place.

Masimo first served discovery – interrogatories and document production requests – on the defendants in August and September 2019. The responses, served in September and October, commenced with a page and a half of "general objections," which are, of course, ineffective. (See Code Civ. Proc. §§ 2030.210, subd. (a)(3) [interrogatories]; 2031.210, subd. (a)(3) [inspection demands].) The individual responses, repeated for each interrogatory and request for production, consisted only of objections – lack of standing, the pending criminal matter, violation of Bauche's First and Fifth Amendment rights, an existing arbitration agreement, and Bauche's opinion that the matter should be consolidated with another case. Bauche refused to state the date and

---

6     Vanderpool argues in its reply brief that it acted with substantial justification, albeit under a different code section and for a different reason than the one proffered at oral argument. It maintains that it could not meet and confer with Masimo's counsel because it was no longer counsel of record or engage in discovery because of the two stays.

     We do not entertain arguments raised for the first time in a reply brief. (See *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal.App.4th 847, 894, fn. 10.) Moreover, this version of Vanderpool's substantial justification argument ignores the discovery responses it twice prepared that consisted of nothing but objections.

6

place of his birth, his current residence address, his educational history, whether he could read and write English, and whether he had a driver's license on these grounds. He refused to produce any documents relating to his own communications with Massimo or relating to procuring services for Massimo. In fact, he refused to answer any interrogatories or to agree to produce any documents at all on these grounds.

After agreeing on the occasion of a conference with the discovery referee to provide further discovery responses, Vanderpool served supplemental responses to Massimo's form interrogatories, special interrogatories, and document production requests. Although Bauche provided some substantive responses to the form interrogatories – he revealed his date and place of birth, his current residence address, his possession of a driver's license, his educational history, and his ability to read and write English – his responses to the special interrogatories and the document production requests were once again solely objections. To the boilerplate objections based on standing and an arbitration agreement provided to the original responses, Vanderpool added boilerplate objections of retaliation, relevance, and invasion of privacy.[7] In fact, the responses to the document production requests were so boilerplate that the individual responses began "Responding Party objects to this *interrogatory* . . . ." Only intermittently did these responses refer to a "request for production."[8]

Contrary to Vanderpool's argument, the statutory language authorizing monetary sanctions for discovery misuse does not limit their imposition to counsel of record. "Any attorney" advising that conduct can be liable for monetary sanctions.[9] Vanderpool indisputably advised defendants to stonewall Masimo's discovery efforts not

---

[7] As the referee subsequently pointed out, objections based on lack of standing and an arbitration agreement are not properly made in discovery responses. A challenge to standing is made in a demurrer or a motion to dismiss. A claim of binding arbitration is made through a motion to compel arbitration.

[8] Several responses to document production requests include an objection to "this Form Interrogatory."

[9] California Rules of Court, rule 3.1348(a) allows a court to award discovery sanctions pursuant to a motion to compel even if the opposing party provides the discovery after the motion was filed. Clearly forcing a party to resort to the court to get discovery is the sanctionable behavior.

once but twice, the second time after promising to provide substantive answers. As the discovery referee held, and the trial court confirmed, Vanderpool's precipitate exit from its representation of at least Bauche did not insulate it from these sanctions for its prior discovery misuse. Bauche's insistence that he would "stick with the objections" even after Vanderpool ceased to represent him showed that the discovery misuse it had initiated was perpetuated beyond the date of substitution.

The record contradicts Vanderpool's second argument, that the trial court did not independently consider the referee's findings. The record includes a minute order of September 13, 2022, which states, "The Court, having received the above documents [i.e., the referee's recommendation report, Vanderpool's objections to the report, and Masimo's opposition to the objections], reviewed the Discovery Referee's Recommendation report received on 05/16/2022, reviewed the Objection to the Report and Recommendation filed by [Vanderpool] on 05/26/2022, and reviewed the Opposition to [Vanderpool's] Objection to Report and Recommendation filed . . . on 06/07/2022. [¶] After review of all three documents, the Court signed the Discovery Referee's Recommendations report on 09/12/2022." Vanderpool cites no authority to the effect that the trial court must prepare a ruling separate from the discovery referee's recommendations.

Finally, Vanderpool argues that Masimo's counsel failed to meet and confer before filing the motion to compel discovery. Vanderpool ignores the fact that Masimo's counsel met and conferred with Bauche directly, as Vanderpool would not meet and confer. Bauche told counsel that he was standing by Vanderpool's objections and would not provide further responses.

The record shows Masimo's efforts to meet and confer with Vanderpool before filing the April 18, 2022, motion, and Vanderpool's refusal to do so. After dodging letters and emails, Vanderpool finally made its refusal to meet and confer explicit in an email: "Your remedy is elsewhere, and an attorney with your billing rate

8

should know that. We are not here to educate you." This language leads us to our final observations, along the same lines as those we expressed to Vanderpool's counsel during oral argument.

This court has in the past had occasion to deplore the lack of civility that has flourished in the legal profession in recent decades. In fact, we devoted an entire opinion, *Lasalle v. Vogel* (2019) 36 Cal.App.5th 127, to tracing the deterioration in the way attorneys now address and behave toward each other. As we observed in *Kim v. Westmoore Partners, Inc.* (2011) 201 Cal.App.4th 267, 293, "Our profession is rife with cynicism, awash in incivility. Lawyers and judges of our generation spend a great deal of time lamenting the loss of a golden age when lawyers treated each other with respect and courtesy."

More recently, another court has echoed this sentiment in upholding a severe reduction in an attorney fee request: "Excellent lawyers deserve higher fees, and excellent lawyers are civil. Sound logic and bitter experience support these points. [¶] Civility is an ethical component of professionalism. Civility is desirable in litigation, not only because it is ethically required for its own sake, but also because it is socially advantageous: it lowers the costs of dispute resolution. The American legal profession exists to help people resolve disputes cheaply, swiftly, fairly, and justly. Incivility between counsel is sand in the gears. [¶] Incivility can rankle relations and thereby increase the friction, extent, and cost of litigation. Calling opposing counsel a liar, for instance, can invite destructive reciprocity and generate needless controversies. Seasoning a disagreement with avoidable irritants can turn a minor conflict into a costly and protracted war. All those human hours, which could have been put to socially productive uses, instead are devoted to the unnecessary war and are lost forever. All

9

sides lose, as does the justice system, which must supervise the hostilities." (*Karton v. Ari Design & Construction, Inc.* (2021) 61 Cal.App.5th 734, 747 (*Karton*).)[10]

Evidently Vanderpool's principal attorney, Douglas Vanderpool, did not get the memo. We have quoted above from the condescending email he sent to Masimo's counsel, Robert Ellison, expressing the firm's refusal to meet and confer. After being served with the moving papers for the motion to compel, Douglas Vanderpool began an email to Ellison with the subject line "You are joking right?" The body of the email continued in the same vein: "In 30 years of practice this may be the stupidest thing I've ever seen. Robert is this really why you went to law school? Quit sending us paper. you know we are out of the case so just knock it off and get a life. Otherwise we're going to be requesting sanctions against your firm for even bothering us with this nonsense."

Douglas Vanderpool made good on his threat to ask for sanctions against Masimo and its counsel, a request the trial court denied. Although he went into great detail about his 31-year career as an advocate and arbitrator, he badly missed the mark of excellence articulated in *Karton*: "[E]xcellent lawyers are civil." (*Karton, supra,* 61 Cal.App.5th at p. 747.)

Civility is not about etiquette. This is not a matter of bad manners. Incivility slows things down, it costs people money – money they were counting on their lawyers to help them save. And it contravenes the Legislature's directive that "all parties shall cooperate in bringing the action to trial[.]" (Code Civ. Proc., § 583.130.)

Incivility is the adult equivalent of schoolyard bullying and we will not keep looking the other way when attorneys practice like this. They will be called out and immortalized in the California Appellate Reports.

---

[10] The plaintiffs in *Karton* continued their course of incivility at the appellate level, thereby confirming the trial court's large reduction in the fee award. "In short, in this appeal [plaintiffs] have come out swinging, apparently believing the best defense is a good offense. This approach demonstrates the trial court was within its discretion to conclude [plaintiffs] conducted litigation that was less than civil." (*Karton, supra,* 61 Cal.App.5th at p. 748.)

Here, the lack of civility, throwing even more sand into the gears, coupled with the blatant and pervasive substantive discovery misuse could only have confirmed to the referee and to the court that monetary sanctions against Vanderpool were warranted in this case.  We find nothing to quarrel with in that conclusion.

## DISPOSITION

The order awarding discovery sanctions against the Vanderpool Law Firm is affirmed.  Respondent is to recover its costs on appeal.


BEDSWORTH, ACTING P. J.

WE CONCUR:


GOETHALS, J.


MOTOIKE, J.


11